UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN TOVAR | § | |
| | § | **CIVIL ACTION NO. 1:14-CV-151** |
| **Plaintiff** | § | |
| | § | |
| VS. | § | |
| | § | |
| ACE CASH EXPRESS, INC., | § | |
| | § | |
| **Defendant** | § | |

## COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COMES NOW**, Plaintiff Juan Tovar and brings this cause of action against ACE CASH EXPRESS, INC. ("ACE CASH EXPRESS"). ACE CASH EXPRESS operates several business locations in the local area operating as ACE CASH EXPRESS. Mr. Tovar respectfully shows that the Defendant's retail store at the Harlingen location ("Harlingen ACE CASH EXPRESS") on 623 W. Harrison is not accessible to individuals with mobility disabilities, in violation of state and federal law.

### STATEMENT OF CLAIM

1.      Mr. Tovar, a person with a physical disability and mobility impairments, brings this action for declaratory and injunctive relief, attorneys' fees, costs, and litigation expenses against Defendant for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181, *et seq*. ("ADA"), and its attendant regulations, the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), the Texas Accessibility Standards ("TAS"), promulgated under the Texas Architectural Barriers Act ("TABA"), Tex.Gov't. Code §469, and Chapter 121 of the Texas Human Resources Code, Tex.Hum.Res. Code §121.001 *et seq*. ("Chapter 121").

2.      Defendant refused to provide Mr. Tovar and others similarly situated with handicap accessible parking in the parking lot that serves the Harlingen ACE CASH EXPRESS.  Additionally, the Harlingen location does not provide a van accessible spot nor an ADA compliant entrance to its business.  Based on these facts, ACE CASH EXPRESS has denied Mr. Tovar the ability to enjoy the goods, services, facilities, privileges, advantages, and accommodations at Harlingen ACE CASH EXPRESS.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.  Mr. Tovar further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to consider his state law claims.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the events complained of occurred in the City of Harlingen, Cameron County, wherein the Harlingen ACE CASH EXPRESS is located.

## PARTIES

5.      Plaintiff Juan Tovar is a Vietnam Veteran with a 100% Disability Rating, established by the Veterans Administration and the Department of Veterans Affairs.  Mr. Tovar has mobility impairments and uses a cane, walker, and wheelchair for mobility. He is a "qualified individual with a disability" within the meaning of ADA Title III and a "person with a disability" within the meaning of Chapter 121.

6.      Defendant ACE CASH EXPRESS, Inc. owns and operates the ACE CASH EXPRESS business located at 623 W Harrison, Harlingen, Texas, 78550.  As a "hardware store, shopping center, or other sales or rental establishment," the business is a place of public accommodation, operated by a private entity, whose operations affect commerce within the meaning of Title III of the ADA and Texas Accessibility Standards. *See* Tex.Gov't Code §469.003(a)(4) (applying TAS to buildings defined as public accommodations under the ADA).  It is also a public facility within the meaning of Chapter 121. Tex.Hum.Res. Code §121.003.

7.      Defendant ACE CASH EXPRESS, Inc., is a Texas Corporation, whose headquarters are in Irving, North Texas.  The address of the corporate headquarters is 1231 Greenway Drive, Suite 800, Irving, TX 75038.  In accordance with the Federal Rules of Civil Procedure, Defendant can be served process via its Registered Agent in Texas: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

**FACTS**

8.      The Harlingen ACE CASH EXPRESS is a business establishment and place of public accommodation.   The Harlingen ACE CASH EXPRESS is owned by ACE CASH EXPRESS, Inc.  ACE CASH EXPRESS has been criticized as a predatory lender and has been fined by the United States Consumer Finance Protection Bureau. *See* **Exhibit 1**.  Defendant was also investigated by the Texas Office of Consumer Credit.

9.      The ACE CASH EXPRESS is not accessible to wheelchair users and disabled individuals because there are <u>no</u> handicap-accessible parking spots in the parking lot that serves the store at this property.

10.     Both Satellite photographs and photographs taken at the scene confirm these statements. *See* **Figures 1-6**, *supra.*

3



**Fig. 1 - Overhead view of Harlingen ACE CASH EXPRESS, 623 W Harrison, Harlingen, Texas 78550 in 2014.** Satellite Images from *Texas General Land Office, Texas Orthoimagery Program, U.S. Geological Survey, 2014.*

**Note: No Disabled Parking Spaces are visible, no striping is visible.**



**Fig. 2 - Harlingen ACE CASH EXPRESS.  Note: No Disabled Parking**



**Fig. 3 -** View towards North, Business Location on Right Side.
**Note: No Disabled Parking**



**Fig. 4 –** View towards East, Business Location on Left Side.
Note: No Disabled Parking



**Fig. 5 -** ACE CASH EXPRESS, View towards North, Business Location on Left.
**Note: No Disabled Parking**



**Fig. 6 -** ACE CASH EXPRESS Storefront on 623 W. Harrison St.
**Note: No Disabled Parking**

11.     The Plaintiff patronized the ACE CASH EXPRESS located at 623 W

Harrison, Harlingen, Texas, 78550, in June of 2014.

12.     In encountering and dealing with the lack of an accessible facility, the

Plaintiff experienced difficulty and discomfort. This violation denied the Plaintiff full and

equal access to facilities, privileges and accommodations offered by the Defendant.

13.     Additionally, on information and belief, the Plaintiff alleges that the

failure to remove the barrier was intentional because: (1) this particular barrier is intuitive

and obvious; (2) the Defendant exercised control and dominion over the conditions at this

location and, therefore, the lack of accessible facilities was not an "accident" because had

the Defendant intended any other configuration, it had the means and ability to make the change.

14.     There is currently no ramp, nor other means of access to the facility that will clear the more than 1/2" threshold to enter the business.  The facility also lacks a van accessible ADA parking spot.

15.     The Americans with Disability Act (ADA), 42 U.S.C. §12101, has been federal law for over 25 years.


## I. FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
## 42 U.S.C. § 12101

16.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

17.     Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

> a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

> b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

18.    Pursuant to 28 C.F.R., Part 36, Appendix D (herein after "1991 Standards"), section 4.1.2, and 36 C.F.R., Part 1191, Appendix B (herein after "2010 Standards"), section 208.2, if a business provides between 26 and 50 parking spaces, they must provide at least two handicap parking spaces, one of which must be van accessible (having an eight foot access aisle).  *See* **Exhibit 2**.

19.    Here, the Defendant did not provide a single compliant handicap-accessible parking space in its parking lot, although doing so is easily and readily done, and, therefore violated the ADA.  This is a violation of the law and is discriminatory.

## II. SECOND CAUSE OF ACTION:
## VIOLATION OF CHAPTER 121, TEXAS HUMANS RESOURCES CODE, TEXAS ACCESSIBILITY STANDARDS

20.    Chapter 121 specifically addresses the ability of people with disabilities to integrate fully into society.  Chapter 121 states the policy of Texas "is to encourage and enable persons with disabilities to participate in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy all public facilities available within the state." Tex.Hum.Res. Code §121.001.

21.    Pursuant to the legislative mandate in the Texas Human Resources Code,

the Texas Department of Licensing and Regulation adopted the Texas Accessibility

Standards ("TAS") to be the minimum guidelines for compliance with Chapter 121 of the

Tex.Hum.Res. Code.  The goal of TAS is to embody the required standards of

accessibility for places of public accommodation.

22.     TABA applies to privately funded buildings or facilities defined as a

"public accommodation" by 42 U.S.C. §12181, and its subsequent amendments.

Tex.Gov't. Code §469.003(a)(4).  The Harlingen ACE CASH EXPRESS is such a public

facility.

23.     Defendant's violations of the ADA, 42 U.S.C. §12182 and 36 C.F.R., Part

1191, Appendix B, § 208.2 also constitute violations of the corresponding sections of the

Texas Accessibility Standards § 208.2.

24.     Defendant's actions have denied, and continue to deny, Mr. Tovar,

because of his disabilities, and those like him, the opportunity to participate in or benefit

from a good, service, or accommodation that is equal to that afforded other individuals,

thus violating Chapter 121. Tex.Hum.Res. Code §121.001, *et seq.*


**RELIEF REQUESTED**

Injunctive Relief

25.     Mr. Tovar will continue to experience unlawful discrimination as a result

of Defendant's refusal to comply with the ADA, Chapter 121, and the TABA. Injunctive

relief is necessary so he and all individuals with disabilities can access the Harlingen

ACE CASH EXPRESS equally, as required by law, and to compel Defendant to restripe

the parking lot in order to add one accessible parking space, which will be a van

accessible spot.  Injunctive relief is also necessary to compel Defendant to modify the

10

building by installing ramps and removing barriers to entry that are more than ½", in compliance with federal and state laws.

Declaratory Relief

26.     Mr. Tovar is entitled to declaratory judgment concerning Defendant's violations of law, specifying the rights of individuals with disabilities to access the goods and services at the Harlingen ACE CASH EXPRESS.

27.     The facts are undisputed and Defendant's non-compliance with the ADA has been proven through satellite photographs and on-site photographs.

Statutory Damages

28.     Mr. Tovar is entitled to damages in the amount of at least $300 per violation of Chapter 121 by Defendant, pursuant to Tex.Hum.Res. Code §121.004(b).

Attorneys' Fees and Costs

29.     Plaintiff is entitled to reasonable attorneys' fees, litigation costs, and court costs, pursuant to 42 U.S.C. §12205.

**PRAYER FOR RELIEF**

THEREFORE, Mr. Tovar respectfully requests this Court award the following relief:

A.  A permanent injunction, compelling Defendant to comply with the Americans with Disabilities Act; and enjoining Defendant from violating the ADA and Chapter 121 of the Texas Human Resources Code; and from discriminating against Mr. Tovar and

those similarly-situated, in violation of the law;

B.  A declaratory judgment that Defendant's actions are a violation of the ADA and Chapter 121 of the Texas Human Resources Code;

C.  Damages in the amount of at least $300 per violation of Chapter 121, pursuant to Tex.Hum.Res. Code §121.004(b);

D.  Find that Mr. Tovar is the prevailing party in this action, and order Defendant liable for Plaintiff's attorneys' fees, costs, and litigation expenses; and,

E.  Grant such other and additional relief to which Plaintiff may be entitled in this action.

DATED: AUGUST 10, 2014          Respectfully submitted,

By:     /s/ Omar W. Rosales

Omar W. Rosales

**THE ROSALES LAW FIRM, LLC**
WWW.OWROSALES.COM
OMAR W. ROSALES
Federal No. 69067
402 SOUTH F ST
HARLINGEN, TX 78550
(866) 402-8082 Toll-Free
(956) 423-1417 Tel
(956) 524-5173 Fax

CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil Local Rules, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

/s/ Omar W. Rosales

OMAR W. ROSALES,
ATTORNEY OF RECORD FOR
PLAINTIFF JUAN TOVAR

EXHIBIT 1

HOME > NEWSROOM > CFPB TAKES ACTION AGAINST ACE CASH EXPRESS FOR PUSHING PAYDAY BORROWERS INTO CYCLE OF DEBT

JUL 10 2014

# CFPB Takes Action Against ACE Cash Express for Pushing Payday Borrowers Into Cycle of Debt

*ACE to Pay $10 Million for Using Illegal Debt Collection Tactics to Pressure Consumers Into Debt Traps*

**WASHINGTON, D.C.** — Today, the Consumer Financial Protection Bureau (CFPB) took enforcement action against ACE Cash Express, one of the largest payday lenders in the United States, for pushing payday borrowers into a cycle of debt. The CFPB found that ACE used illegal debt collection tactics – including harassment and false threats of lawsuits or criminal prosecution – to pressure overdue borrowers into taking out additional loans they could not afford. ACE will provide $5 million in refunds and pay a $5 million penalty for these violations.

"ACE used false threats, intimidation, and harassing calls to bully payday borrowers into a cycle of debt," said CFPB Director Richard Cordray. "This culture of coercion drained millions of dollars from cash-strapped consumers who had few options to fight back. The CFPB was created to stand up for consumers and today we are taking action to put an end to this illegal, predatory behavior."

ACE is a financial services company headquartered in Irving, Texas. The company offers payday loans, check-cashing services, title loans, installment loans, and other consumer financial products and services. ACE offers the loans online and at many of its 1,500 retail storefronts. The storefronts are located in 36 states and the District of Columbia.

Payday loans are often described as a way for consumers to bridge a cash-flow shortage between paychecks or other income. They are usually expensive, small-dollar loans that must be repaid in full in a short period of time. A March 2014 CFPB study found that four out of five payday loans are rolled over or renewed within 14 days. It also found that the majority of all payday loans are made to borrowers who renew their loans so many times that they end up paying more in fees than the amount of money they originally borrowed.

The CFPB has authority to oversee the payday loan market and began supervising payday lenders in January 2012. Today's action resulted from a CFPB examination, which the Bureau conducted in coordination with the Texas Office of Consumer Credit Commissioner, and subsequent enforcement investigation.

## Illegal Debt Collection Threats and Harassment

The CFPB found that ACE used unfair, deceptive, and abusive practices to collect consumer debts, both when collecting its own debt and when using third-party debt collectors to collect its debts. The Bureau found that ACE collectors engaged in a number of aggressive and unlawful collections practices, including:

- **Threatening to sue or criminally prosecute:** ACE debt collectors led consumers to believe that they would be sued or subject to criminal prosecution if they did not make payments. Collectors would use legal jargon in calls to consumers, such as telling a consumer he could be subject to "immediate proceedings based on the law" even though ACE did not actually sue consumers or attempt to bring criminal charges against them for non-payment of debts.



**Receive press releases by email**

Email address

[                    ]

SIGN UP

**More Information On**

Press Release    Enforcement

Payday loans



Need our logo? You can find it here.

**Photos and bios**

    

Director Rich Cordray    Deputy Director Steven Antonakes

**Press contacts**

Jen Howard
Assistant Director of Communications
(202) 435-7170
Jennifer.Howard@cfpb.gov

Walter Suskind
Press Assistant
(202) 435-9469
Walter.Suskind@cfpb.gov

Mallory McLean
Regional Spokesperson
(202) 435-7955
Mallory.Mclean@cfpb.gov

Moira Vahey
Spokesperson
(202) 435-9151
Moira.Vahey@cfpb.gov

Sam Gilford
Spokesperson

- **Threatening to charge extra fees and report consumers to credit reporting agencies:** As a matter of corporate policy, ACE's debt collectors, whether in-house or third-party, cannot charge collection fees and cannot report non-payment to credit reporting agencies. The collectors, however, told consumers all of these would occur or were possible.

- **Harassing consumers with collection calls:** Some ACE in-house and third-party collectors abused and harassed consumers by making an excessive number of collection calls. In some of these cases, ACE repeatedly called the consumers' employers and relatives and shared the details of the debt.

## Pressured into Payday Cycle of Debt

The Bureau found that ACE used these illegal debt collection tactics to create a false sense of urgency to lure overdue borrowers into payday debt traps. ACE would encourage overdue borrowers to temporarily pay off their loans and then quickly re-borrow from ACE. Even after consumers explained to ACE that they could not afford to repay the loan, ACE would continue to pressure them into taking on more debt. Borrowers would pay new fees each time they took out another payday loan from ACE. The Bureau found that ACE's creation of the false sense of urgency to get delinquent borrowers to take out more payday loans is abusive.

ACE's 2011 training manual has a graphic illustrating this cycle of debt. According to the graphic, consumers begin by applying to ACE for a loan, which ACE approves. Next, if the consumer "exhausts the cash and does not have the ability to pay," ACE "contacts the customer for payment or offers the option to refinance or extend the loan." Then, when the consumer "does not make a payment and the account enters collections," the cycle starts all over again—with the formerly overdue borrower applying for another payday loan.

**The ACE cycle-of-debt training manual graphic is available at:**
http://files.consumerfinance.gov/f/201407_cfpb_graphic_ace-cash-express-loan-process.pdf

## Enforcement Action

Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the CFPB has the authority to take action against institutions engaging in unfair, deceptive, or abusive practices. The CFPB's order requires ACE to take the following actions:

- **Pay $5 million in consumer refunds:** ACE must provide $5 million in refunds to the overdue borrowers harmed by the illegal debt collection tactics during the period covered by the order. These borrowers will receive a refund of their payments to ACE, including fees and finance charges. ACE consumers will be contacted by a third-party settlement administrator about how to make a claim for a refund.

- **End illegal debt collection threats and harassment:** The order requires ACE to ensure that it will not engage in unfair and deceptive collections practices. Those practices include, but are not limited to, disclosing debts to unauthorized third parties; directly contacting consumers who are represented by an attorney; and falsely threatening to sue consumers, report to credit bureaus, or add collection fees.

- **Stop pressuring consumers into cycles of debt:** ACE's collectors will no longer pressure delinquent borrowers to pay off a loan and then quickly take out a new loan from ACE. The Consent Order explicitly states that ACE may not use any abusive tactics.

(202) 435-7673
Samuel.Gilford@cfpb.gov



Visite nuestro sitio web en
ESPAÑOL

Stay connected

Twitter    Facebook    Flickr    Youtube

### Archive

▼ 2014
JULY 2014 (17)
JUNE 2014 (13)
MAY 2014 (11)
APRIL 2014 (14)
MARCH 2014 (12)
FEBRUARY 2014 (11)
JANUARY 2014 (13)

► 2013
► 2012
► 2011
► 2010

- **Pay a $5 million fine:** ACE will make a $5 million penalty payment to the CFPB's Civil Penalty Fund.

**The full text of the Bureau's Consent Order is available at:**

http://files.consumerfinance.gov/f/201407_cfpb_consent-order_ace-cash-express.pdf

CFPB takes complaints about payday loans. To submit a complaint, consumers can:

- Go online at consumerfinance.gov/complaint
- Call the toll-free phone number at 1-855-411-CFPB (2372) or TTY/TDD phone number at 1-855-729-CFPB (2372)
- Fax the CFPB at 1-855-237-2392
- Mail a letter to: Consumer Financial Protection Bureau, P.O. Box 4503, Iowa City, Iowa 52244

### ###

*The Consumer Financial Protection Bureau is a 21st century agency that helps consumer finance markets work by making rules more effective, by consistently and fairly enforcing those rules, and by empowering consumers to take more control over their economic lives. For more information, visit consumerfinance.gov.*

EXHIBIT 2





# 2010 ADA Standards for Accessible Design

**Department of Justice**
September 15, 2010

**208 Parking Spaces**

**208.1 General.** Where parking *spaces* are provided, parking *spaces* shall be provided in accordance with 208.

> **EXCEPTION:** Parking *spaces* used exclusively for buses, trucks, other delivery vehicles, law enforcement vehicles, or vehicular impound shall not be required to comply with 208 provided that lots accessed by the public are provided with a passenger loading zone complying with 503.

**208.2 Minimum Number.** Parking *spaces* complying with 502 shall be provided in accordance with Table 208.2 except as required by 208.2.1, 208.2.2, and 208.2.3. Where more than one parking *facility* is provided on a *site*, the number of *accessible spaces* provided on the *site* shall be calculated according to the number of *spaces* required for each parking *facility*.

### Table 208.2 Parking Spaces

| Total Number of Parking Spaces Provided in Parking Facility | Minimum Number of Required Accessible Parking Spaces |
|---|---|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1000 | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 |

> **Advisory 208.2 Minimum Number.** The term "parking facility" is used Section 208.2 instead of the term "parking lot" so that it is clear that both parking lots and parking structures are required to comply with this section. The number of parking spaces required to be accessible is to be calculated separately for each parking facility; the required number is not to be based on the total number of parking spaces provided in all of the parking facilities provided on the site.

**208.2.1 Hospital Outpatient Facilities.** Ten percent of patient and visitor parking *spaces* provided to serve hospital outpatient *facilities* shall comply with 502.

> **Advisory 208.2.1 Hospital Outpatient Facilities.** The term "outpatient facility" is not defined in this document but is intended to cover facilities or units that are located in hospitals and that provide regular and continuing medical treatment without an overnight stay.  octors  offices, independent clinics, or other facilities not located in hospitals are not considered hospital outpatient facilities for purposes of this document.

**208.2.2 Re abilitation Facilities and Outpatient P ysical T erapy Facilities.** Twenty percent of patient and visitor parking *spaces* provided to serve rehabilitation *facilities* specializing in treating conditions that affect mobility and outpatient physical therapy *facilities* shall comply with 502.

> **Advisory 208.2.2 Re abilitation Facilities and Outpatient P ysical T erapy Facilities.**  onditions that affect mobility include conditions requiring the use or assistance of a brace, cane, crutch, prosthetic device, wheelchair, or powered mobility aid; arthritic, neurological, or orthopedic conditions that severely limit one s ability to walk; respiratory diseases and other conditions which may require the use of portable oxygen; and cardiac conditions that impose significant functional limitations.

**208.2.3 Residential Facilities.** Parking *spaces* provided to serve residential *facilities* shall comply with 208.2.3.

**208.2.3.1 Parking for Residents.** Where at least one parking *space* is provided for each *residential dwelling unit*, at least one parking *space* complying with 502 shall be provided for each *residential dwelling unit* required to provide mobility features complying with 809.2 through 809.4.

**208.2.3.2 Additional Parking Spaces for Residents.** Where the total number of parking *spaces* provided for each *residential dwelling unit* exceeds one parking *space* per *residential dwelling unit*, 2 percent, but no fewer than one *space*, of all the parking *spaces* not covered by 208.2.3.1 shall comply with 502.

**208.2.3.3 Parking for Guests  Employees  and Ot er Non Residents.** Where parking spaces are provided for persons other than residents, parking shall be provided in accordance with Table *208.2*.

**208.2.  an Parking Spaces.**  or every six or fraction of six parking *spaces* required by 208.2 to comply with 502, at least one shall be a van parking *space* complying with 502.

**208.3 Location.** Parking *facilities* shall comply with 208.3

**208.3.1 General.** Parking *spaces* complying with 502 that serve a particular *building* or *facility* shall be located on the shortest *accessible* route from parking to an *entrance* complying with 206.4. Where parking serves more than one *accessible entrance*, parking *spaces* complying with 502 shall be dispersed and located on the shortest *accessible* route to the *accessible entrances*.  n parking